**SYSCON CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Nos. 496–84C, 128–85C, 498–84C and 127–85C.**

United States Claims Court.

June 27, 1986.

Jay L. Cohen, Washington, D.C., for plaintiff; Jay B. Myerson and Israel & Raley, of counsel.

Jane W. Vanneman, with whom was Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant; Edward Hoffman and Michael Cosgrove, Defense Logistics Agency, Philadelphia, Pa., of counsel.

## OPINION

WIESE, Judge.

Presently before the court in this contract pricing dispute is the "Defendant's Motion For Disqualification Of Plaintiff's Counsel", Jay L. Cohen, and Mr. Cohen's law firm, Israel & Raley, from further participation in these cases. The Government contends that Mr. Cohen's continued representation of Syscon Corporation will result in violations of several of the ethics rules adopted by this court.[1] The parties have fully briefed the issues, and the court heard oral argument on June 19, 1986. The court now concludes that the Government's motion should be denied, and that plaintiff's counsel should be allowed to continue his representation.

## DISCUSSION

The Government's objections to Mr. Cohen's representation of Syscon stem from the business interests of one of Mr. Cohen's law partners, Fred Israel. In addition to his affiliation with the law firm of Israel & Raley, Mr. Israel is a founder of Syscon, and is currently Syscon's general counsel and a member of its board of directors. He also owns a portion of Sys-

con's stock. These various connections, argues the Government, give rise to conflicts between Mr. Israel's professional obligations as a lawyer and member of the firm of Israel & Raley, and his managerial role and ownership stake in Syscon. Because of these alleged conflicts, the Government argues that professional rules of conduct dictate the disqualification of the firm of Israel & Raley, including Jay L. Cohen, from representing Syscon in this proceeding. The court considers each of the Government's specific contentions in turn.

■ The Government's first argument centers on American Bar Association Model Rule of Professional Conduct number 1.7(b) (1983). That rule sets forth part of the basic rule on conflict of interest:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by * * * the lawyer's own interests, unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation * * *.

According to the Government, Fred Israel stands in violation of the foregoing Rule because of his concurrent interests in Israel & Raley and Syscon. Among the most basic of a lawyer's professional obligations is the obligation to insure the independence—and thus the integrity—of his legal advice. That independence, says the Government, is threatened here in a variety of ways because of Fred Israel's dual status.

The Government lists the following concerns that it sees as perhaps affecting the legal advice provided by Israel & Raley: that it may suffer an unconscious bias in favor of supporting the managerial decisions at stake in these cases because of Mr. Israel's presumed involvement in those decisions and his close affiliation with Syscon

---

1. Appendix F of the Rules of the United States Claims Court sets out the court's Rules of Disciplinary Enforcement. Rule III identifies the American Bar Association Model Rules of Professional Conduct as the Code of Professional Responsibility adopted by the court.

management, that it may be tempered by an over-solicitous concern for Syscon's profits and thus avoid recommending a course of action which, though perhaps strategically desirable, entails expenses which the Government might not be obliged to reimburse under its contracts with Syscon, and finally, that it might be settlement-averse or otherwise inclined to protract the litigation because, in theory at least, Syscon would be able to pass on its legal fees to the Government under the contracts involved in these cases.

The Government's argument cannot succeed. True, Mr. Israel could not be regarded as a disinterested advocate; and so neither, then, could a member of his firm. Perhaps in the best of all worlds, the interests of lawyer and client alike would settle upon a rule requiring an unchallengeable impartiality of counsel. But that is not the requirement that governs these cases. What we have, instead, is a rule that says that a lawyer's own interests dictate his disqualification as counsel only when those interests are likely to "materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." Comment, Model Rule 1.7.

Going by this standard, a case for disqualification of counsel because of conflict of interest has not been shown to exist. First, Mr. Israel has no "reputational" stake in the management decisions that underlie the pricing disputes in issue. According to the affidavit of Syscon's president, those decisions were his alone, made "without consultation with the Board of Directors generally or Fred Israel in particular." Second, it borders on the frivolous to suggest that concern for the corporate pocketbook might lead Israel & Raley to avoid a litigating strategy otherwise desirable, but that risks the potential of a Government challenge to the reasonableness of the fees involved and, hence, to their potential reimbursability under Syscon's contracts. The Government gives this argument no details and without such we are at a total loss to perceive any fixed connection between the wisdom of adopting a particular legal position and the fees incurred because of it. Surely, the Government does not mean to say that sound advice is only available at an unreasonable fee.

Last, as to the notion that Israel & Raley has here uncovered a "gold mine" (the Government's words) because of the Government's potential contract liability for the attorney fees Syscon incurs in this litigation, suffice it to say that whatever the validity of this argument and the concerns that it raises, a change in law firms would surely not overcome it. In sum, the Government's arguments do not persuade the court that Mr. Israel's respective interests in Syscon and Israel & Raley harbor an incompatibility such that neither he nor a member of the law firm may represent Syscon in this litigation.

■ The Government next contends that the ethical rule which governs the circumstances under which a lawyer may appear both as trial advocate and witness in his own cause here demands Jay Cohen's disqualification. The Model Rule in question, Rule 3.7 ("Lawyer as Witness") reads in relevant part as follows:

> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

As an initial matter, the court observes that the Rule, as drafted by the ABA, admits to some uncertainty in meaning. On first reading, it seems to state no more than an obvious proposition: that a lawyer may serve as trial advocate so long as he is not barred from doing so by the conflict rules, namely, Rule 1.7 ("Conflict of Interest: General Rule") and Rule 1.9 ("Conflict of Interest: Former Client"). The less obvious meaning, but the one we think was intended, is that if the conflict rules alone would preclude the *testifying* lawyer from acting as both advocate and witness (*e.g.,* his testimony would be adverse to the client), then no one in the testifying law-

yer's firm may serve as advocate. *Accord* Model Rules of Professional Conduct, Rule 3.7 comments 5, 9 (proposed revisions of the District of Columbia Bar Model Rules of Professional Conduct Committee, Sept. 10, 1985).

With that understanding as a starting point, the court cannot agree with the Government's contention that Rule 3.7(b) requires Mr. Cohen's disqualification. To begin with, the Government has not demonstrated that Mr. Israel's testimony would create a conflict of interest situation, as Rule 3.7(b) would require. Mr. Israel has sworn an affidavit stating that he believes any testimony he might give would not be adverse to Syscon, and we find nothing in the circumstances of the case to suggest otherwise. Indeed, Syscon's affidavits assert that Mr. Israel did not even participate in the management decisions at issue in the merits of these cases, so his testimony would probably be only on peripheral matters, if it were necessary at all. When one considers these affidavits in light of the nature of the disputes in question—cost disallowances the resolution of which will primarily involve questions of law and historical data—the possibility of Mr. Israel's giving adverse testimony becomes very remote. Thus Rule 3.7(b) does not bar Mr. Cohen from litigating these cases.

■ The premise for the Government's final argument is Rule 1.8(j), which prescribes that "[a] lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client * * *." The Government contends that Mr. Israel's Syscon stock, and its arguable increase in value if Syscon prevails in these cases, constitute a "proprietary interest" in this litigation. Because Mr. Israel should therefore be disqualified, the argument continues, Mr. Cohen should be as well under principles of imputed disqualification.

There are two problems with this argument. The first concerns the notion of imputed disqualification, *i.e.*, that Mr. Israel's disqualification also necessitates Mr. Cohen's. The pertinent provision of the

Model Rules, Rule 1.10(a), states that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2." Thus in the present case, Rule 1.10(a) would prohibit Mr. Cohen's representation of Syscon if Mr. Israel's representation would violate any of the other Rules mentioned.

This said, the flaw in the Government's position is obvious: Rule 1.10(a) does not impute disqualification where the underlying violation is of Rule 1.8(j), as is alleged here. The Government's technical attempts to circumvent the import of Rule 1.10(a)'s silence as to Rule 1.8(j) are unpersuasive, especially given that 1.10(a) specifically mentions another portion of that same Rule, namely, Rule 1.8(j). This last point makes clear that the drafters deliberately excluded Rule 1.8(j) violations from the ambit of imputed disqualification, and from this it follows that Mr. Cohen need not be disqualified here.

■ The court hesitates, however, to rely completely on a wooden application of the Rules' technical aspects to resolve this question. Hence, for the sake of argument we assume that a violation of Rule 1.8(j) should be imputed to all law firm members. The issue then becomes the existence of the underlying Rule 1.8(j) violation; specifically, whether Mr. Israel's stock ownership constitutes a "proprietary interest" in this litigation within the meaning of Rule 1.8(j).

Surprisingly, there is a dearth of authority on this question, few courts having confronted similar questions of disqualification under Rule 1.8(j) or its ABA Code counterpart, DR 5–103(A). *See* Model Code of Professional Responsibility DR 5–103(A) (1979). Most of the cases touching on the subject arise in a class action context, holding that an attorney may not represent a class of which he is a member. *E.g., Bachman v. Pertschuk*, 437 F.Supp. 973, 977–78 (D.D.C.1977). Another case ruled that an attorney may not purchase his client's right to collect on a personal injury claim. *In Re Shaw*, 88 N.J. 433, 443 A.2d 670 (1982). In

all the cases of which the court is aware, the ethical violations involved an attorney's direct receipt of cash as a result of winning the litigation involved.

The present case is different. Should Syscon prevail, Mr. Israel will not receive any money from the Government. The only financial benefit accruing to Mr. Israel would be an increase in the value of his Syscon stock which would theoretically result from a judgment in Syscon's favor. In light of the myriad factors influencing a publicly-traded stock's value, however, it is speculation to say that such a judgment would produce an actual increase in market price. Thus as a factual matter we question whether stock ownership truly constitutes a "proprietary interest" in a lawsuit.

Additionally, such a conclusion is problematical as a policy matter. The court presumes that lawyers who work as corporate counsel often choose to own shares in their employer companies. Were courts to adopt the Government's position here, then stock ownership would preclude house counsel from ever serving their employers as litigation counsel. Such a restriction seems overly stringent, and inconsistent with present reality. Inasmuch as the Government has cited to the court no cases or sources supporting that approach, we decline to adopt such a policy. We therefore conclude that Mr. Israel's stock ownership at issue here does not constitute a "proprietary interest" in this litigation, and that no Rule 1.8(j) violation exists here.

The court has considered the Government's other arguments, and does not find them persuasive.[2] Accordingly, the "Defendant's Motion For Disqualification Of Plaintiff's Counsel" is DENIED. Mr. Cohen and Israel & Raley shall be allowed to continue as Syscon's counsel in these consolidated cases.

2. At the outset of its argument on the instant motion, the Government moved for and was granted leave to amend its answers and to add counterclaims, including counterclaims based upon fraud, in the cases numbered 498–84C and 127–85C. Since the motion to disqualify counsel was raised prior to the assertion of any fraud issues, the denial of the motion must necessarily be taken to be without prejudice to its renewal should pursuit of the fraud issues yield new facts calling for a different result under the ABA's Model Rules of Professional Conduct.